IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:16-cr-00154-WSD |
| ALAN ALBERT TRIPPS, | |
| Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on Magistrate Judge Alan J. Baverman's Final Report and Recommendation [45] ("R&R"). The R&R recommends that the Court deny Defendant Alan Albert Tripps' ("Tripps") Motion to Suppress Evidence [20] ("Evidence Motion") and grant Tripps' Motion to Suppress Statements [34] ("Statements Motion") (sometimes collectively referred to as the "Suppression Motions"). The Magistrate Judge recommends the Statements Motion be granted except that Tripps' post-arrest, pre-Miranda statements are admissible for impeachment if Tripps testifies at trial. Also before the Court is Tripps' Objection to Magistrate's Report and Recommendation [48] ("Objection").

**I.     BACKGROUND**[1]

On January 7, 2016, Officer Brian Washington of the Marietta Police Department, while on his routine patrol duty, observed a silver Jetta, driven by Tripps, make an illegal U-turn. (Transcript of August 31, 2016, Evidentiary Hearing [37] ("Tr.") 11-12, 22). Barbara Hernandez was a passenger in the car. (Tr. 15-16). Officer Washington pulled the car over and, once stopped, walked to the driver's side door.[2] (Tr. 11-12). At the driver's window, Officer Washington smelled burned and unburned marijuana. (Tr. 12, 45). When asked for his driver's license, Tripps stated he did not have it with him. (Tr. 12, 24). Officer Washington's check of records determined that Tripps' license was suspended for nonpayment of child support and failure to appear in court. (Tr. 12-13, 26, 28). Officer Washington decided to arrest Tripps for driving on a suspended license. (Tr. 28).

Marietta Police Officers Staso and McNeal arrived to provide Officer Washington backup support. (Tr. 14, 25). Officer Washington went back to the Jetta and told Tripps to get out of the car. (Tr. 14, 25). About this same time,

---

[1]     The facts are taken from the R&R and the record. The parties have not objected to any specific facts in the R&R, and the Court finds no plain error in them. The Court thus adopts the facts set out in the R&R. See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

[2]     The stop was video and partially audio recorded. The Court relies on the citation to these recordings in the R&R and does not repeat them in this Order.

Tripps informed Officer Washington that he put his handgun, which Tripps stated was legal, on the dashboard. (Tr. 14, 20, 26-27, 47-48). Officer Washington saw the gun on the dashboard. (Tr. 14, 20, 26-27, 47-48). Officer Washington handcuffed Tripps and told him he was under arrest for driving without a license. (Tr. 14, 16). When Tripps got out of the car, Officer Washington saw an extended handgun magazine on the floorboard. (Tr. 14). Officer McNeal went to the passenger side of the car to speak with Ms. Hernandez. (Tr. 15, 45-46).

After Tripps was handcuffed, Officer Washington searched him incident to the arrest and removed $623.00 in cash from him. (Tr. 14, 37). When asked what he did for a living, Tripps told Officer Washington he was a warehouse forklift driver. (R&R at 3). He told Officer Washington that the cash was from his paycheck and he needed it to pay bills. (R&R at 3-4). Tripps was put in the back of the patrol car and was told everything he said was being recorded. (Tr. 14; R&R at 4).

Officer McNeal told Officer Washington that she did not smell marijuana in the car. (Tr. 15, 32).[3] Ms. Hernandez told Officer Washington that Tripps worked at a restaurant and helped others at a record label. (Tr. 17, 40). The inconsistency

---

[3]   By the time Officer McNeal spoke to Ms. Hernandez through her open car window, the car windows had been open for a number of minutes.

regarding Tripps' employment, the smell of marijuana, and the currency Tripps had on him made Officer Washington suspicious.  (R&R at 4-5).

Tripps and Ms. Hernandez, who owned the car, declined to consent to a search of the vehicle.  (Tr. 33-34).

Officer Washington asked Tripps a number of questions after Tripps' arrest.  Tripps was not threatened, weapons were not pointed at him, no promises were made to him, and he did not appear to be under the influence of any substance.  (Tr. 17-18, 24).  Tripps initially was not advised of his <u>Miranda</u> rights.  (Tr. 17).[4]

To confirm whether illegal substances were in the vehicle, Officer Washington called for a drug dog to be brought to the site of the stop.  (Tr. 15).  Ms. Hernandez was asked to get out of the car before the dog arrived.  (Tr. 16).  Officers retrieved her coat from the car.  (R&R at 6).  Officer Washington took possession of the firearm on the dashboard and gave it to Officer Staso.  (R&R at 6).  Ten to twelve minutes after Ms. Hernandez got out of the car, the drug dog arrived with his handler, Officer Figueroa.  (Tr. 17, 35).  The dog performed an open-air sniff around the car and alerted on the passenger door and trunk.  (Tr. 18-19, 57-60).  Officer Washington and Officer Figueroa searched the car after the

---

[4]   <u>Miranda</u> rights were later read to Tripps but not until he was asked and had answered a number of questions from Officer Washington and the other officers.

dog alerted and found in the back seat a zipped shaving bag with .01 grams of marijuana, a pipe, cocaine, a marijuana grinder, drug paraphernalia, and several scales, including one that was digital. (Tr. 19, 48-49, 68-69).

Officer Washington asked Tripps why he did not tell him about the drugs earlier. (Tr. 20). Officer Washington also told Tripps that Ms. Hernandez said the drugs belonged to Tripps. (R&R at 8). Tripps stated that there was no cocaine or heroin in the car and that he wanted to see the drugs. (R&R at 8). Officer Washington told Tripps that he would show the drugs to him depending on whether Tripps would speak with Officer Washington. (R&R at 8). Tripps repeatedly denied knowledge of the drugs. (R&R at 8).

## II.   PROCEDURAL HISTORY

Tripps moved to suppress evidence found in the car on the grounds (i) that he was unconstitutionally detained during the stop of the vehicle and (ii) that the drug dog sniff was unconstitutional. He also moved to suppress his post-arrest statements because he was not advised of his Miranda warnings.

The Magistrate Judge conducted a lengthy evidentiary hearing on the Suppression Motions and, subsequently, issued his R&R recommending that the Court deny the Evidence Motion but grant the Statements Motion, with the finding that Tripps' statements were made voluntarily and thus could be used to impeach

him if he testifies at trial.  Tripps objects to the Magistrate Judge's conclusions that the seizure of the drugs and paraphernalia, and related evidence, from the vehicle is admissible.  Tripps argues that the Magistrate Judge erred in his findings that (i) "the stop and arrest of Tripps based upon a traffic violation was lawful," (ii) the time to investigate and use the drug dog did not violate Tripp's constitutional rights, (iii) Officer Washington had reasonable suspicion that marijuana was used and was present in the car, and (iv) the Supreme Court's decision in Rodriguez v. United States, 135 S.Ct. 1609 (2015), does not apply to this case.

### III.  STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted).  With respect to those findings and recommendations

6

to which a party has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## IV.  DISCUSSION

### A.  Validity and Duration of the Traffic Stop

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996).  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  "The Fourth Amendment [thus] plainly does not prohibit a law enforcement officer from pulling over a motorist for suspected [traffic violation] whenever the officer is acting solely on the basis of his visual observation."  United States v. Monzon-Gomez, 244 F. App'x 954, 959 (11th Cir. 2007); see also United States v. McLaughlin, 279 F. App'x 856, 858 (11th Cir. 2008) (observation of two traffic violations provided reasonable suspicion for traffic stop).  An officer need only have sufficient cause to believe that a traffic law has been violated, regardless of the officer's subjective motivations.  United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999); see United States v. Arvizu, 534 U.S. 266, 273 (2002)

(reasonable suspicion to justify a stop is based on totality of the circumstances and whether detecting officer has particularized and objective basis to suspect wrongdoing).

The Eleventh Circuit has set out the contours for a traffic stop based on reasonable suspicion:

> Under Terry, an officer's actions during a traffic stop must be "reasonably related in *scope* to the circumstances which justified the interference in the first place."

United States v. Purcell, 236 F. 3d 1274, 1277 (11th Cir. 2001) (citation omitted). The Eleventh Circuit has stated: "[T]he *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." Id. That is, a "[t]raffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." Id. (citation omitted). The duration of a stop also is evaluated from the perspective of the time needed to assess and address any risk to the officers conducting a stop. United States v. Rice, 483 F. 3d 1079, 1084 (10th Cir. 2007). "[T]he smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct. . . ." United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010); see also United States v. Garcia, 592 F.2d 259, 260 (5th Cir. 1979) (smell of

8

marijuana establishes reasonable suspicion to search a car trunk).[5]  Questions and directions to vehicle passengers are constitutionally allowed because "passengers present a risk to officer safety equal to the risk presented by the driver."  Rice, 483 F. 3d at 1084.

The traffic stop was unquestionably valid.  Officer Washington, on patrol duty on January 7, 2016, saw a silver Jetta make an illegal U-turn.  He stopped the vehicle based on the traffic violation he observed.  He had sufficient cause to believe the violation occurred and the stop was constitutionally allowed.  Simmons, 172 F.3d at 778.

Defendant argues that Officer Washington exceeded the scope of a permissible traffic stop to have a drug detection dog conduct an open-air sniff, and, based on the dog's alert, to search the Jetta.  The argument is not persuasive.

Officer Washington testified at the evidentiary hearing that, when at an open window of the Jetta, he smelled burned and unburned marijuana.[6]  Officer Washington promptly asked Tripps and Ms. Hernandez to get out of the car and he called for a drug dog to be brought to the scene to conduct an open-air sniff.  Cf.

---

[5]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

[6]  When Officer Figueroa arrived with the drug dog, he commented that he smelled marijuana.  (Tr. 58)

Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (officer may require car occupant to get out of the vehicle during traffic stop). When the dog alerted to the presence of drugs in the vehicle, Officer Washington had probable cause to believe that the vehicle contained drugs. See, e.g., United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006) ("We have long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'" (citation omitted)). Probable cause gave Officer Washington the right to search every part of the vehicle, including the backseat and trunk. See United States v. Ross, 456 U.S. 798, 825 (1982) (permitting the search of "every part of the vehicle and its contents that may conceal the object of the search"); see United States v. Baldwin, 774 F.3d. 711, 720 (11th Cir. 2014) ("Once probable cause exists to search the vehicle, the police may search all parts of the vehicle, and any containers therein, where the object of the search might be found.").

The Court concludes that Officer Washington had probable cause to stop Tripps for an illegal U-turn and that he did not exceed the scope of a permissible traffic stop. Officer Washington smelled within the car what he believed to be burned and unburned marijuana. This gave him a valid reason to call in a drug detection dog to investigate if there were drugs in the vehicle. The dog and handler arrived several minutes later. The dog alerted to the presence of drugs in

the Jetta and this gave investigating officers probable cause to search the vehicle. Upon *de novo* review, the Court overrules Defendant's Objections based on the period for the traffic stop and the investigation of the suspected presence of controlled substances.

      B.      Applicability of Rodriguez v. United States

The Supreme Court in Rodriguez discussed whether the time required to conduct an open-air sniff by a drug dog during a traffic stop wrongfully exceeded the scope of a permissible stop. In Rodriguez, the Supreme Court stated that a detention is not reasonable when, after the traffic violation for which the stop was conducted, the stop is extended to conduct an open-air sniff by a drug dog. That is not what happened in this case. In this case, the stop was based on an illegal U-turn. In the early stages of the stop and before the U-turn violation was resolved, Officer Washington detected the smell of burned and unburned marijuana. It was on the basis of the suspicion that there was marijuana in the vehicle that the drug dog and handler were requested. The reasonable suspicion of drugs here arose during the processing of a constitutional detention, the traffic stop, which permitted the extension of the stop to conduct an open-air sniff; an extension that began only several additional minutes after the call for the dog was made. See United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (traffic

stop may be extended beyond time necessary to process the traffic violation where "there is articulable suspicion of other illegal activity.")  Upon *de novo* review, the Court overrules Defendant's Objection to the Magistrate Judge's finding that Rodriguez does not preclude use of the drug dog.

    C.    Post-Arrest, Pre-Miranda Statements

The Government bears the burden of showing the statements made by a defendant were voluntary and complied with the requirements of Miranda v. Arizona, 384 U.S. 436 (1966).  Whether a defendant's statements were voluntary—that is, whether the police used coercive tactics to obtain statements from a defendant—is based on an evaluation of the totality of the circumstances.  See United States v. Gonzalez, 71 F.3d 819, 828 (11th Cir. 1996); United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

The Magistrate Judge found that Tripps was questioned after he was placed in custody and before given Miranda warnings.  The Magistrate Judge, evaluating the totality of the circumstances surrounding the statements made by Tripps, concluded that the statements were voluntary but were made while in custody without the benefit of Miranda warnings.  The Magistrate Judge determined that the Miranda violation required that the statements made before warnings were given were required to be suppressed.  Because, however, the statements were

voluntarily made, they could be used for impeachment purposes if Tripps testifies at trial. The Court finds no plain error in these findings or recommendation.

## V. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report and Recommendation [45] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Objections to the R&R [48] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [20] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements [34] is **GRANTED**, except that Defendant's post-arrest, pre-Miranda statements are admissible for impeachment if he testifies at trial.

**SO ORDERED** this 7th day of March, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE